IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-0718-06 & 0719-06






GREGORY LEE VILLANUEVA, Appellant



v.



THE STATE OF TEXAS





ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW


FROM THE FIRST COURT OF APPEALS


BURLESON COUNTY





 Keller, P.J., filed a dissenting opinion.


 The Court says, essentially, that appellant was not guilty of two offenses because his baby sustained
only one injury, and the injury was not aggravated by the failure to get medical help. The Court seems to
agree that if appellant's failure to get medical help had caused a different injury, or caused the injury to
worsen, he could be held criminally liable for failing to get help. Even if a second, or worse, injury is
required in order to sustain a conviction for a second offense, I think the evidence here supports such a
finding.

 It is pretty clear that seven week old Greg Jr., was shaken violently late at night, which caused
shearing of blood vessels in his brain. When he was first injured, the corner of his lips were blue, but he
was moving and his eyes were open. Thirty to forty-five minutes later, the baby was making grunting noises
and his body was limp. While appellant was arguing with the baby's mother about whether to go to the
hospital, the baby "bowed up." Appellant would not let the mother take the baby to the hospital.

 By the next morning, Greg Jr. had a high fever and one of his eyes was off to the right and not
moving. At the hospital, his brain had swollen to the point that the soft spot on his head was bulging, his
pupils were fixed and dilated, and he was having trouble breathing. He had "lots of edema because the
injury was several hours old." His medical condition deteriorated. His brain continued to swell and he
continued to get worse. The examination of the baby was suggestive of a lack of oxygen as well as injury
to the brain itself. The autopsy showed that sutures on his skull were widely separated, which meant that
the brain had swelled and enlarged them. He also had an older head injury and older, healing broken ribs.

 There was testimony that when a baby is shaken, there is usually an onset of problems around the
time of the shaking. After that, it gets "progressively" worse. One witness used the example of a sprained
ankle to describe the progression of swelling: the moment that a person sprains his ankle there is no
swelling, but some time over the next few hours the swelling occurs. 

 Greg Jr. was treated for his injuries. He was treated with seizure medicine and his eye deviation
improved. His doctor planned to put a tube in the baby's skull to allow for fluid to be removed in the hope
of giving the brain more room to swell. He was put on a ventilator. The doctors were going to try to give
him medicine to adjust for possible excessive urine output. There was testimony that the hospital staff
administered aggressive treatment to this child and to all children, "in an effort to try to allow them enough
time to heal" and to try to allow them to survive.

 This evidence, not to mention common sense, suggests that earlier treatment might have allowed
Greg Jr. to live. The unnecessary delay allowed his brain to swell for hours. By the time he reached the
hospital, his brain had already swollen to the extent that the top of his head was bulging out. His condition
clearly worsened overnight. Though there is no specific testimony that Greg Jr. would have survived his
injuries if he had received faster treatment, neither is there testimony that he was doomed from the first
moment. 

 The legislature has shown a willingness to impose additional criminal liability for a person's failure
to mitigate the results of his (or others') conduct. Failure to render aid is a stand-alone offense, as is failure
to report a felony and failure to stop and render aid, to mention but a few examples. These statutes reflect
the legislature's effort to encourage the amelioration of injury. The Court's opinion thwarts this common-sense proposition. 

 In this sad case, appellant committed not one crime, but two.

 I respectfully dissent. (1) 

Date filed: June 27, 2007

Publish
1. I note also that, in vacating the conviction for injury to a child, the Court has acted contrary to
the holding in Ex parte Cavazos, 203 S.W.3d 333 (Tex. Crim. App. 2006) that parole eligibility may
not be considered in making such decisions and has adopted the position of my concurring opinion in
that case.